IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

AMANDA DAVIS,              )
                                     )
            Plaintiff,      )
                                     )
vs.                           )     Case No. 14-0625-CV-W-ODS
                                     )
THE BOARD OF TRUSTEES OF   )
NORTH KANSAS CITY HOSPITAL,  )
                                     )
            Defendant.   )

## ORDER AND OPINION GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

      Pending is Defendant's Motion to Dismiss, which seeks to (1) dismiss the Complaint or portions thereof for failing to satisfy the pleading requirements of Rule 8 as construed in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), (2) dismiss Count III because it does not permit suit against Defendant, and (3) dismiss Counts II through IV to the extent they seek damages from more than two years before the suit was filed. Alternatively, Defendant asks the Court to direct Plaintiff to file a more definite statement. The Court (1) declines to dismiss the case (in whole or in part) for insufficient pleading, (2) dismisses Count III, (3) will apply a two-year statute of limitations to Plaintiff's state law claims, and (4) declines to order Plaintiff to file a more definite statement of her claims.


## I.  BACKGROUND


      According to the Amended Complaint, Defendant "operates a hospital in North Kansas City, Missouri" and Plaintiff is employed at the hospital as an hourly employee. Amended Complaint ("AC") ¶¶ 5-6, 12. Plaintiff

- was required to work in excess of forty hours per week, AC ¶¶ 13, 16;
- was "frequently interrupted" during meal periods in order to perform work (and on occasion denied meal time entirely) but Defendant did not compensate for this

time worked; instead, pursuant to a policy adopted by Defendant, a full, standardized time period was designated as off-the-clock meal time regardless of whether Plaintiff actually received the full meal time, AC ¶¶ 2, 14; and

- Defendant's policies called for the rounding of "employee time to the nearest 15 minute interval," which indicates Plaintiff was not compensated for any time increment spent working that was less than 7½ minutes. AC ¶ 15.[1]

As a result of the application of these policies to Plaintiff, she was caused to work more than forty hours per week but she was not paid an overtime wage. AC ¶¶ 16-17. The Amended Complaint does not allege how often this happened to Plaintiff, nor does it allege the number of overtime hours she allegedly worked. The Amended Complaint further alleges that Defendant's policies were applied to other hourly employees, resulting in other employees working more than forty hours per week without receipt of overtime wages. AC ¶¶ 18-20.

The Amended Complaint sets forth four claims:

Count I        Violation of the Fair Labor Standards Act ("FLSA")

Count II       Unjust Enrichment

Count III      Violation of the Missouri Minimum Wage Law ("MMWL")

Count IV      Quantum Meruit

Plaintiff intends to seek certification of a collective action for Count I (pursuant to the FLSA) and certification of a class for Counts II through IV (pursuant to Rule 23). As a prelude to that effort, she has set forth the questions of law and fact she believes are common to the class members, AC ¶ 34, and has asserted the legal requirements for certification are satisfied. AC ¶¶ 32-33, 35-39. The Amended Complaint does not set forth much in the way of a factual explanation as to Plaintiff's position, the other hourly employees' positions, or how they are similarly situated.

---

[1]Paragraph 15 also alleges Defendant "maintain[ed] a discipline policy that allows it to discipline employees for tardiness." The Court is not certain what this adds to Plaintiff's claims, unless it is meant to clarify that an employee who works five minutes extra on one day without compensation is precluded from "recovering" that time by arriving five minutes late on another day.

2

A.

The liberal pleading standard created by the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Fed. R. Civ. P. 8(a)(2)).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Id. (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In ruling on a motion to dismiss, the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[ ]."  Stodghill v. Wellston School Dist., 512 F.3d 472, 476 (8th Cir. 2008).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

A claim is facially plausible if it allows the reasonable inference that the defendant is liable for the conduct alleged.  E.g., Horras v. American Capital Strategies, Ltd., 729 F.3d 798, 801 (8th Cir. 2013); Braden v. Wal-Mart Stores, Inc., 588 F.3d 585,

3

594 (8th Cir. 2009). Several principles guide the Court in determining whether the Amended Complaint meets this standard. First, the Court must accept the factual allegations as true, but the Court should not accord any credence to legal conclusions or "formulaic" recitations of the elements for the cause of action. Second, while the factual averments are to be read in the plaintiff's favor, the Court must be wary of vague or indeterminate facts that require additional factual enhancement. "Finally, the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Id.

Viewed through this lens, the Court concludes the Amended Complaint easily satisfies the requirement that it set forth facts plausibly demonstrating Defendant's liability. Plaintiff alleges she is an hourly employee and that two different policies independently cause her to work more than forty hours per week. Those policies are described in sufficient detail to apprise Defendant of what those policies are, and the manner in which they cause Plaintiff to work more than forty hours per week is sufficiently explained. Plaintiff has sufficiently stated a claim that she works more than forty hours per week and is not paid overtime, thereby violating federal and state statutes and conferring benefits upon Defendant for which recovery under quasi-contract theories might be had.

Defendant presents a series of district court decisions that have invoked the plausibility standard to require additional detail. The Court is not inclined embark on the survey of district court decisions Defendant invites. First, the Court is not bound by these decisions. Second, and more importantly, "evaluation of a complaint upon a motion to dismiss is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 556 U.S. at 663-64); see also Zoltek Corp. v. Strucutral Polymer Group, 592 F.3d 893, 896 n.4 (8th Cir. 2010). Little is to be gained by comparing and contrasting the multitude of complaints and corresponding district court decisions addressing the adequacy of other pleadings. It is sufficient for the Court to examine *this* Amended Complaint and evaluate it under the standards enunciated in *Iqbal*, *Twombley*, and the Eighth Circuit cases following those two decisions.

4

Defendant also suggests cases from other districts demonstrate a consensus tending to require an FLSA plaintiff to allege the number (or the approximate number) of overtime hours the plaintiff allegedly worked. The Court will not marshal the cases espousing this view; neither will the Court marshal the cases that hold there is no such requirement.[2] The Court will simply say that it believes the better view is that there is no requirement for an FLSA plaintiff to approximate the amount of overtime hours they worked. The Court reaches this conclusion for the simple reason that *Iqbal* and *Twombley* addressed a plaintiff's obligation to plead a sufficient *basis* for the defendant's liability, not a plaintiff's obligation to plead *the extent* of that liability. The number of overtime hours worked is a component of damages and not an element of the cause of action; Plaintiff has presented allegations plausibly demonstrating she worked some amount of overtime without proper compensation, and this is enough to establish liability. Cf. 29 U.S.C. §§ 206-07, 216.[3] The issue of damages can be addressed through discovery and Rule 26(a)(1)(A)(iii).[4]

Defendant also faults the Amended Complaint for failing to adequately allege that Defendant had either actual or constructive knowledge that she worked overtime.

---

[2] The Court acknowledges the intermediate approach adopted by the Second Circuit and later by the Third Circuit. Under this approach, a plaintiff is required to specify at least one particular workweek in which they worked more than forty hours without receiving overtime compensation. Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 114 (2d Cir. 2013); see also Davis v. Abington Mem'l Hosp., 765 F.3d 236, 241 (3d Cir. 2014). Such an allegation certainly increases the quantum of plausibility, but the Court respectfully does not agree that such an allegation is *required* to establish plausibility. Plaintiff alleges that she was required to work more than forty hours in an unspecified week yet was not paid overtime compensation, and she has specified two policies that brought about this result. These allegations establish a plausible violation, even though she has not also specified any one of the weeks in which this occurred. Further specification might make it "more plausible," but the Court finds what she has pleaded to be "plausible enough."

[3] The Court reaches the same conclusion with respect to the state law claims. Plaintiff must allege she was damaged in order to advance a plausible claim of liability; she does not need to take additional steps to quantify the extent of that damage in order to make a claim of liability.

[4] The parties have already conducted their Rule 26 conference, and reported they would exchange initial Rule 26 disclosures by December 9, 2014.

There seems little doubt that this is something Plaintiff must *prove*, the question is whether she needs a paragraph that actually says "Defendant had actual or constructive knowledge that the plaintiff worked overtime and was not properly compensated" – or, whether it is sufficient that she pleaded facts that give rise to the inference that Defendant had the requisite knowledge. The Court concludes Plaintiff is entitled to the reasonable inferences of her pleading so the latter is sufficient. Moreover, an allegation that a defendant acted "knowingly" – without more – is probably insufficient without additional facts making the knowledge plausible. Here, Defendant seeks dismissal because Plaintiff alleged the facts making knowledge plausible but did not explicitly say "this means Defendant had knowledge." That extra step seems unnecessary. Plaintiff has identified Defendant's policies that lead to Plaintiff working at times for which she is not paid. It does not take much inferring to conclude Defendant knew that that the combined effect of (1) scheduling a person for a forty-hour workweek and (2) applying a policy that causes the employee to work additional time for which the employee is not paid will result in the employee working more than forty hours in the week.

Defendant's next argument resting on the pleading requirements of *Iqbal* and *Twombley* asserts Plaintiff has not sufficiently alleged a basis for certification of a class or collective action, so those allegations should be dismissed and her plan to seek certification should be preemptively rejected. However, Defendant cites no reported cases (and no cases that are binding on this Court) applying *Iqbal* and *Twombley* to class-related allegations and the Court's independent research failed to unearth any Eighth Circuit (or other Court of Appeals) rulings establishing such a rule. This is not terribly surprising: Rule 8 does not purport to require a "short and plain statement of the grounds" for class certification; it only requires a "short and plain statement" to support jurisdiction and the pleader's entitlement to relief. Fed. R. Civ. P. 8(a)(1), 8(a)(2). *Iqbal* and *Twombley* specifically addressed Rule 8(a)(2) the requirements for establishing Plaintiff's entitlement to relief. E.g., Iqbal, 556 U.S. at 677-79; Twombly, 550 U.S. at 556-61. Certification is not a jurisdictional issue, nor is it a claim for relief. It is a procedural device designed to establish the parties in the case. Another critical difference is that a plaintiff's claim for relief is presented for consideration, defense and resolution via the complaint, and only through the complaint. In contrast, the issue of

certification is typically presented for consideration, defense and resolution with a motion. The detail Defendant seeks must be in the motion.

To be sure, Plaintiff has not presented sufficient information to support certification. In particular, Plaintiff will have to provide sufficient information to justify combining a multitude of workers with different job duties and different circumstances into a single class. Cf. Young v. Cerner Corp., 503 F. Supp. 2d 1226, 1230-33 (W.D. Mo. 2007). But Defendant's argument essentially requires a plaintiff to include in the complaint all the information that would be required to justify certification – which is unprecedented and not required.

Finally, Defendant presents several arguments that essentially require Plaintiff to plead factual allegations demonstrating various defenses and counterarguments that might be raised by Defendant are not applicable. The Court holds Plaintiff is not required to do this.

The Court concludes the Amended Complaint provides an adequate factual basis for concluding Plaintiff's claims are plausible and not merely conceivable. Dismissal is not warranted. Similarly, an order requiring Plaintiff to file a more definite statement of her claims is not warranted.

B.

Defendant next contends it cannot be deemed an "employer" within the meaning of the MMWL, so it cannot be held liable for violating the MMWL. Since 2006, the statute has defined an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." Mo. Rev. Stat. § 290.500(4). The statute further defines a "person" as "any individual, partnership, association, corporation, business, business trust, legal representative, or any organized group of persons." Id. § 290.500(8). Prior to 2006, it was well-understood that local governments were not subject to the MMWL, and the undersigned has previously held that the 2006 amendments did not alter the definition of employer in manner that included local governments within the MMWL's sweep. Ingraham v. Dixon Ambulance Dist., 2010 WL 4531785 (W.D. Mo. 2010). This conclusion is supported – partially, but

7

not completely – by the legion of Missouri cases holding that a statute's use of the term "corporation" does not include municipal corporations. "Unless otherwise specified, where the term 'corporation' is used in our statutes and Constitution it uniformly refers to private or business organizations, not to public corporations." State ex rel. Ormerod v. Hamilton, 130 S.W.3d 571, 572 (Mo. 2004) (en banc); see also East Park Dist. of Kansas City v. Dougherty, 237 S.W.2d 118, 120 (Mo. 1951) (en banc); City of Webster Groves v. Smith, 102 S.W.2d 618, 619-20 (Mo. 1937).

Plaintiff contends this does not end the inquiry because Defendant is not a municipal corporation; Plaintiff views Defendant – a Board of Trustees – as an "organized group of persons" and construing it as an employer does not conflate the definitions of "corporation" and "municipal corporation." Plaintiff also contends dismissing Count III violates the Missouri Supreme Court's command that the MMWL be construed (1) broadly to effectuate its remedial purpose and (2) in harmony with the FLSA. As there are no definitive pronouncements from the Missouri Supreme Court on this issue, the Court must endeavor to predict how the Missouri Supreme Court would rule on this issue if asked, with decisions of intermediate state courts serving as persuasive but not binding authority. E.g., Progressive N. Ins. Co v. McDonough, 608 F.3d 388, 390 (8th Cir. 2010).[5] The Court concludes the Missouri Supreme Court would decree that Count III must be dismissed.

### 1.

Defendant is a Board of Trustees operating the North Kansas City Hospital ("the Hospital"). The Hospital was created pursuant to the provisions of Chapter 96 of the Revised Missouri Statutes, which "provides a mechanism for voters to petition for a tax to support a hospital." State ex rel. Board of Trustees of City of North Kansas City

---

[5]The Court must reject Plaintiff's request to certify the question to the Missouri Supreme Court because the Missouri Supreme Court has held that the statute permitting federal courts to certify questions to it for resolution violates the Missouri Constitution. Grantham v. Missouri Department of Corrections, 1990 WL 602159 (Mo. 1990) (en banc); see also Washington v. Countrywide Home Loans, Inc., 747 F.3d 955, 958 n.2 (8th Cir. 2014); Zeman v. V.F. Factory Outlet, Inc., 911 F.2d 107, 108-09 (8th Cir. 1990).

8

Hosp. v. Russell, 843 S.W.2d 353, 355 (Mo. 1992) (en banc).  Significantly, "[t]he act does not describe itself as creating an entity to run hospitals for cities that own them. Rather, the title shows that *the act was intended to give third class cities a means of operating hospitals*."  Id. (emphasis supplied).  This is significant because Chapter 96 does not grant the Board of Directors "a corporate or political existence, perpetual succession, or existence after dissolution of its city" and so it has no real independent existence.  Id. at 356.

The board is not an entity unto itself, and it is not an independent entity separate from the city.  "The structure of a Chapter 96 board of trustees requires a close relationship between a board and its city.  The members of a board are subject to control of the city because membership on the board depends upon selection by the city government."  Id.  The Board "lacks the fundamental feature of an existence separate and distinct from that of the City" and "[l]acking any separate existence, the Board is not an entity but is part of the City of North Kansas City."  Id. at 356, 357.  "The Board of Trustees is merely a part of the city government (just like the mayor, the city council, zoning commissions, boards of adjustment, park boards, and boards created to operate municipally owned utilities) created by statute to provide the city with a means of operating its hospital."  North Kansas City Hosp. Bd. of Trustees v. St. Luke's Northland Hosp., 984 S.W.2d 113, 117 (Mo. Ct. App. 1998).[6]  And, significantly for present purposes, "[t]he employees of the hospital are city employees."  Id.

An employee of North Kansas City ordinarily could not assert a claim under the MMWL because North Kansas City is a municipal corporation and thus is not an employer within the meaning of the MMWL.  The question becomes: can an employee of North Kansas City working at the Hospital assert such a claim against the Board of Trustees simply because state law mandates that North Kansas City designate a Board of Trustees to operate the Hospital?  The Court does not believe the Missouri Supreme Court would elevate form over substance to reach this result.  Moreover, such a holding would swallow the clear distinction historically drawn between "corporations" and

---

[6]The fact that the Board of Directors may have the power to sue or be sued does not alter the analysis.  Russell specifically declined to address the issue, 843 S.W.2d at 357 n.7, indicating that even if the Board could sue or be sued, the Hospital would still be deemed a part of North Kansas City.

9

"municipal corporations" because there are many municipal functions and operations for which a board (or some other "organized group of persons") has responsibility.  As the Missouri Supreme Court pointed out in <u>Russell</u>, "[n]ot all of the statutes defining some part of government create 'entities'" that are distinct from the city itself.  843 S.W.2d at 357.

<u>2.</u>

        In 2014, the Missouri Supreme Court addressed whether the MMWL contemplated that an employee might have joint employers with both employers having responsibility for compliance with the MMWL, and whether one of the joint employer's unforeseen criminal acts curtailed liability for the other.  In resolving this question, the Missouri Supreme Court held that the MMWL should be construed broadly to effectuate its remedial purpose.  <u>Tolentino v. Starwood Hotels & Resorts Worldwide, Inc.</u>, 437 S.W.3d 754, 761 (Mo. 2014) (en banc).  The court also noted (citing statutory provisions from the MMWL and regulations from the Missouri Department of Labor) that the MMWL should be interpreted in accordance with the FLSA except to the extent the two statutory schemes conflict.  <u>Id</u>. at 757 n.3.

        Plaintiff's argument that <u>Tolentino</u> "put[s] to rest" any question as to whether Defendant is an employer under the MMWL must be rejected, because <u>Tolentino</u> does not address this question.  And, of course, <u>Tolentino</u> does not mean the Court can simply extend MMWL liability to Defendant just because it would expand potential liability or because doing so might otherwise thought to be a good idea.  Liability cannot extend where the statute does not go, and the statute's terms must be heeded.  Here, extending liability ignores the MMWL's restrictive definition of "employer" – a definition that is different than the FLSA's and that excludes municipalities.  The Court does not believe the <u>Tolentino</u> court intended to upset this long-settled interpretation of Missouri law.

10

Defendant contends the statute of limitations on the state claims is two years, and Counts II and IV should be dismissed to the extent they seek damages prior to two years before suit was filed.  "Plaintiffs do not oppose this . . . argument."  Doc. # 36 at 7. Accordingly, the Court will apply a two-year statute of limitations to Counts II and IV.

## III.  CONCLUSION

Defendant's Motion to Dismiss is granted in part and denied in part.  Count III is dismissed for failure to state a claim.  The motion is denied in all other respects.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: March 2, 2015                    UNITED STATES DISTRICT COURT

11